UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

        Plaintiff,

v.

Dean Swain,

        Defendant.

Case No. 3:24-cr-279

MEMORANDUM OPINION
AND ORDER

## I.    INTRODUCTION

Defendant Dean Swain seeks to suppress evidence seized during a search of his residence. (Doc. No. 203). The government filed a brief in opposition to the motion, (Doc. No. 229), and Swain filed a brief in reply. (Doc. No. 241). For the reasons stated below, I deny Swain's motion.

## II.    BACKGROUND

On August 6, 2024, Brad Doolittle, a Special Agent with the Ohio Bureau of Criminal Investigation and a task force agent with the Toledo Resident Office of the Drug Enforcement Administration, submitted a search warrant application and affidavit to United States Magistrate Judge Darrell A. Clay, seeking authorization to search a residence located at 1213 W. Larchmont Drive in Sandusky, Ohio. (Doc. No. 229-1 at 1). Doolittle was part of a team investigating suspected drug trafficking involving Swain, Markier Castile, Mark Castile Jr., Marvin Cunningham, and Mark Castile Sr. (*Id.* at 3-4). The investigation involved physical surveillance as well as electronic surveillance of cell phones used by Castile Jr. and Castile Sr.

Doolittle averred investigators intercepted phone calls between Markier Castile and Castile Jr. in which the two discussed obtaining illegal narcotics, including cocaine and methamphetamine, from Swain. (*Id.* at 7-14). Investigators also intercepted a call between Castile Jr. and Swain. During that call, Swain told Castile Jr. he was "'outside,'" and investigators observed Castile Jr. leave his residence and walk to a white Infiniti owned by Swain and parked in front of Castile Jr.'s residence, before walking back inside. (*Id.* at 10). Castile Jr. then called Markier to tell him he had "the zip" – which Doolittle believed to refer to the methamphetamine – and he also told Markier that Swain might have cocaine to sell to Markier. (*Id.* at 11-12).

The investigation also revealed that Castile Sr., Swain, and Cunningham regularly gambled. By intercepting phone calls made by Castile Sr., investigators determined that activity largely occurred at Pierre Coleman's Boalt Street residence and Swain's Larchmont residence. (*Id.* at 14). Some of those conversations also included what Doolittle believed to be discussion of drug trafficking at Swain's Larchmont residence. (*Id.* at 15-20). During one such conversation, Cunningham told Castile Sr. he had taken Castile Jr. to Swain's residence the previous night, a statement Doolittle understood to mean that Castile Jr. went to Swain's house to pick up narcotics to sell. (*Id.* at 19-20).

Judge Clay approved the warrant request. (*Id.* at 30). Investigators seized substantial quantities of crystal methamphetamine, cocaine, and fentanyl, as well as over $23,000 in cash and a handgun. (*See* Doc. No. 229 at 2). Swain subsequently was indicted on one count each of: conspiracy to distribute, and possess with the intent to distribute, controlled substances; possession of methamphetamine with intent to distribute; possession of fentanyl with intent to distribute; possession of cocaine with intent to distribute; use of a communications facility to facilitate a drug trafficking offense; possession of a firearm in furtherance of a drug trafficking crime; and illegal possession of a firearm and ammunition. (Doc. No. 18).

### III.    ANALYSIS

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 585 U.S. 296, 304 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted).

Probable cause is the "reasonable grounds for belief" that evidence of a crime will be found in a certain place or location. *United Stated v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The probable cause inquiry does not require "an 'actual showing' of criminal activity at the targeted location, . . . instead ask[ing] whether officers provided direct or circumstantial support to create 'more than mere suspicion' that contraband will be found at the location in question." *United States v. Sanders*, 106 F.4th 455, 462 (6th Cir. 2024) (en banc) (quoting *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (further citation omitted), and *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (further citation omitted)).

The principles underlying a court's probable cause review are familiar. The Fourth Amendment requires only that "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (citation omitted) (alteration in original). An affidavit "should be reviewed in a commonsense – rather than a hypertechnical –

manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). A magistrate judge's probable-cause determination is entitled to "great deference." *Sanders*, 106 F.4th at 461 (quoting *Christian*, 925 F.3d at 311-12 (further citation and quotation marks omitted)).

Swain contends the warrant affidavit failed to establish probable cause to search his residence. He first argues, "the Agent failed to establish the required nexus between speculated drug dealing and the house that was searched on August 7, 2024," and that Doolittle failed to show the target residence was Swain's home. (Doc. No. 203 at 3, 4).

An affidavit may be said to create a nexus adequate to support the issuance of a search warrant when it "sufficiently show[s] that the 'specific "things"' to be searched for' (here, evidence of drug trafficking) are 'located on the property to which entry is sought' . . . ." *Sanders*, 106 F.4th at 460-61 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (cleaned up) and *United States v. Carpenter*, 360 F.3d 591, 594-95 (6th Cir. 2004) (en banc) (recognizing the nexus requirement)) (alteration added).

While the nexus analysis has a "fact-intensive nature," circumstantial evidence can be sufficient to establish that there is a fair probability the place to be searched contains evidence of a crime. *Sanders*, 106 F.4th at 461-62. Those circumstances may arise when an individual accessed a property immediately before or after a drug transaction, or where investigators can connect narcotics to a specific property. *See United States v. White*, 990 F.3d 488 (6th Cir. 2021); *United States v. Miggins*, 302 F.3d 384 (6th Cir. 2002).

On June 8, 2024, agents intercepted a phone call in which Castile Sr. told another man Castile Sr. wanted him to meet Castile Sr. at Swain's house "on Larchmont right across the street from" Castile Sr.'s girlfriend's grandparents' house. (Doc. No. 229-1 at 15). Investigators

4

confirmed via electronic surveillance that Castile Sr.'s "black Chevy Silverado arrived at and parked near the Target Location at approximately 11:13 am and remained there for several hours." (*Id.*). Later that same day, investigations intercepted a phone call in which Castile Sr. told his girlfriend that he was "over [at] Dean's." (*Id.*).

Doolittle also provided transcripts from several calls in which Castile Jr. and Markier discussed getting drugs from Swain, as well as a call between Castile Sr. and Cunningham in which Cunningham stated he observed "dope being sold . . . right in front of them" while they were gambling at Swain's residence. (*Id.* at 11-14, 16-19). And, on May 16, 2024, investigators observed Swain arrive at Castile Jr.'s residence just over an hour after Castile Jr. told Markier that his "dude" was bringing him methamphetamine. (*Id.* at 9-10). Just minutes after Castile Jr. met with Swain, Castile Jr. called Markier to tell Markier that he had methamphetamine to give to Markier. (*Id.* at 9-12).

This information, taken together, is sufficient to establish a nexus between Swain's residence and illegal drug trafficking.

Swain resists this conclusion, arguing Doolittle could not have inferred Swain delivered drugs to Castile Jr. because "[t]here are no pictures[ or] video, nor is there any identification by anyone of Mr. Swain as the driver of the car." (Doc. No. 241).

Doolittle stated in the warrant affidavit that:

> On [May 16, 2024], at 6:07 pm, a telephone call was intercepted between CASTILE JR and SWAIN in which SWAIN stated, "I'm outside." At the time of this phone call, Law Enforcement, through electronic surveillance, observed a white Infiniti arrive and park on the street in front of CASTILE JR's residence. Law Enforcement observed CASTILE JR walking from his residence to the Infiniti, and then back towards his residence. Law Enforcement knows SWAIN operates and is the co-owner of a white Infiniti, Ohio Registration HHU 6547. The Infiniti observed in front of CASTILE JR's residence appeared to be consistent with SWAIN's and its arrival to CASTILE JR's residence coincided with the above-mentioned phone call. Based on your Affiant's training, experience, and knowledge of this investigation, your Affiant believes that SWAIN dropped off one ounce of methamphetamine to CASTILE JR at this time.

5

(Doc. No. 229-1 at 10).

It is true, as Swain contends, that he was not visually identified as the driver of the Infiniti. But it certainly was reasonable for investigators to infer Swain was in the vehicle registered in his name when that vehicle parked in front of Castile Jr.'s residence and Swain said over the phone that he was "outside." (*Id.*). This argument is not persuasive.

Swain also argues the warrant affidavit does not establish probable because "typical investigative information" was "glaringly missing." (Doc. No. 241 at 2). But a search warrant "'affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.'" *United States v. Thomas*, 605 F.3d 300, 309 (6th Cir. 2010) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)).

The warrant affidavit contains sufficient information to establish a fair probability that evidence of a crime would be found at Swain's residence. Therefore, I deny Swain's motion.

Moreover, even if I were to assume the warrant violated the Fourth Amendment, I conclude the officers executing it relied upon it in good faith. The Supreme Court has held that the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring v. United States*, 555 U.S. 135, 145 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984) (internal quotation marks omitted)).

There are "four circumstances in which an officer's reliance on a subsequently invalidated warrant cannot be considered objectively reasonable:

> first, if the issuing magistrate 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;' second, if 'the issuing magistrate wholly abandoned his judicial role;' third, if the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' or in other words, where 'the warrant application was supported by [nothing] more than a "bare bones" affidavit,' and, fourth, if the 'warrant may be so facially deficient—*i.e.*, failing to particularize the place to be searched or the things to be seized.'"

6

*United States v. Neal*, 577 F. App'x 434, 448 (6th Cir. 2014) (quoting *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996)).

Swain argues officers could not have relied on the warrant in good faith because it was "bare bones" and supported only by "suspicions[] and unfounded conclusions." (Doc. No. 203 at 7); (*see also* Doc. No. 241 at 4). "[A] bare bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's belief that probable cause existed.'" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (further citation and quotation marks omitted)). By comparison, if a court can identify in the affidavit "*some* connection, regardless of how remote it may have been — some modicum of evidence, however slight — between the criminal activity at issue and the place to be searched, then the affidavit is not bare bones and official reliance on it is reasonable." *White*, 874 F.3d at 497 (citation and internal quotation marks omitted) (emphasis in original).

For all the reasons I discussed above, the warrant affidavit in this case plainly meets this standard. Therefore, I deny Swain's good-faith challenge as well.

## IV. CONCLUSION

For the reasons set forth above, I deny Defendant Dean Swain's motion to suppress. (Doc. No. 203).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

7